IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| PATRICK UDOEWA, individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>ETTAIN GROUP, INC.,<br><br>  Defendant. | Civil Action 3:18-cv-000535 |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS UNOPPOSED
MOTION FOR APPROVAL OF SETTLEMENT OF FLSA COLLECTIVE ACTION**

**I. INTRODUCTION**

Named Plaintiff[1] Patrick Udoewa ("Plaintiff"), individually and on behalf of all others similarly situated, and Defendant Ettain Group, Inc. ("Defendant" or "Ettain") (together, the "Parties") have agreed to resolve the above-captioned lawsuit on a collective basis under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.

The settlement satisfies the criteria for approval of a FLSA collective action settlement, as it resolves a *bona fide* dispute, was reached after contested litigation, and was the result of arm's-length settlement negotiations between counsel. Accordingly, Plaintiff seeks, and Defendant does not oppose, court approval of the Settlement Agreement and Release reached in this action (the "Settlement Agreement") attached as Exhibit 1 to the Declaration of Ryan F. Stephan, filed in support of Plaintiff's Unopposed Motion for Approval of Settlement ("Stephan Decl.")[2]. For the

---

[1] All capitalized terms are defined in the Settlement Agreement and Release. *See* Settlement Agreement, ¶ 10 *et seq.*

[2] Unless otherwise indicated, all exhibits are attached to the Stephan Declaration.

1

Court's convenience, a Proposed Approval Order is also attached to the Stephan Decl. as Exhibit 2.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Named Plaintiff worked for Defendant as a Trainer, providing training and support services to medical facilities in connection with the implementation and administration of integrated health computer systems and related software. Plaintiff was compensated on an hourly basis, and received straight time pay for all hours worked, including those in excess of 40 in a workweek.  Plaintiff filed his Collective Action Complaint ("Compl.") on October 3, 2018, alleging that Defendant violated the FLSA by knowingly suffering and/or permitting Plaintiff and others similarly situated to work in excess of 40 hours per week without properly compensating them at an overtime premium rate for these overtime hours. Compl. at ¶ 1. Specifically, Plaintiff alleges that he and others similarly situated were paid straight time for all hours they worked, including all overtime hours worked each week in excess of 40 hours per week, rather than one and one-half times their regular rate of pay as required by the FLSA. *Id.* at ¶¶ 12-13. Defendant filed an Answer on December 10, 2018.  Defendant denies any liability for alleged failure to pay overtime compensation under the FLSA, including that Plaintiff and others similarly situated were properly compensated pursuant to the computer professional exemptions to the FLSA's overtime pay requirements, denies that collective action treatment would be appropriate in litigation and disputes the claims asserted in the Lawsuit.

On December 10, 2018, the Court entered a Notice instructing the Parties to conduct an Initial Attorney's Conference by December 25, 2018. On December 20, 2018, the Parties participated in an initial scheduling conference. Mindful of the costs associated with litigation, the Parties agreed to work together to explore the possibility of an early resolution of the matter.

2

Thereafter, the Parties collected and exchanged informal pre-discovery information and documentation to facilitate their settlement discussions, including electronic time and pay records for the potential collective. As a result of several months of settlement discussions and negotiations, the Parties have agreed to settle the Lawsuit, the final terms of which are memorialized in the Settlement Agreement and Release. *See* Settlement Agreement.

**III.    SUMMARY OF THE SETTLEMENT TERMS**

The Settlement Agreement provides that the case will be certified as a collective action pursuant to 29 U.S.C. §216(b) for settlement purposes only, and establishes a settlement fund of $180,000.00 ("Gross Settlement Amount") from which Plaintiff and Settlement Collective Members may claim a settlement award. *See* Settlement Agreement at ¶ 10(j). The Gross Settlement Amount means the maximum amount that Defendant will pay in connection with the settlement, including Court-approved attorneys' fees and costs, settlement administration costs, and a service award to Named Plaintiff. *Id*. All Settlement Collective Members shall receive a settlement award based on the following formula:

> (i)   $25.00 will be allocated to each Settlement Collective Member, prior to the determination of *pro rata* individual settlement shares;
>
> (ii)  The Net Settlement Amount, less $25.00 per Settlement Collective Member, will then be divided by the total number of hours over forty (40) worked by all Settlement Collective Members, to determine a dollar amount per overtime hour ("Overtime Hour Value");
>
> (iii) Each Settlement Collective Member will receive a *pro rata* portion of the Net Settlement Amount that is then determined by multiplying his/her total overtime hours worked by the Overtime Hour Value.

*Id*. at ¶ 26.

The Settlement Collective Members eligible to receive a settlement award are the Named Plaintiff and all persons who worked for the Defendant as a Trainer or Go-Live as set forth in the

Complaint in the Lawsuit from December 21, 2015 to the present, compensated on an hourly basis, and who worked more than forty (40) hours in a workweek for which they did not receive overtime pay at a rate of one and one-half their regular rate. *Id.* at ¶ 10(y). Defendant represents there are a total of forty-three (43) Settlement Collective Members at issue in this Lawsuit. *Id.*

Following Court approval, the Settlement Administrator will mail the Notice of Collective Action Settlement ("Settlement Notice"), attached as Exhibit 3, to all Settlement Collective Members, along with Settlement Award checks that will include, on the back, a Check Opt-In Form. *Id.* at ¶¶ 10(c), (aa). Settlement Collective Members will have one hundred and twenty (120) calendar days to cash his or her Settlement Award check, from the date it is first issued. *Id.* at ¶ 10(d). On and after the Check Void Date, any uncashed Settlement Award check will be deemed void and of no further force and effect, and shall revert to Defendant. *Id.* Only those Settlement Collective Members who timely cash a Settlement Award check, and whose Check Opt-In Form is unaltered and deemed sufficient after reverse positive pay services by the Settlement Administrator, will be deemed "Participating Collective Members" and will be bound by the terms of the Settlement Agreement and Release. *Id.* at ¶¶ 10(p), 12-13.

Subject to the approval of the Court, the Parties agreed to retain Atticus Administration to serve as the Settlement Administrator. *See* Settlement Agreement at ¶ 10(w). The Settlement Administration Costs are estimated to be $6,000.00 and will be paid from the Gross Settlement Amount. *Id.* at ¶ 24. Pursuant to the Settlement Agreement and subject to the approval of the Court, Named Plaintiff requests, and Defendant does not oppose, a service award in the amount of $10,000.00 in recognition of his assistance rendered in obtaining the settlement for the collective and the risks he undertook to do so. *Id.* at ¶ 23(a). Finally, pursuant to the Settlement Agreement and subject to the approval of the Court, Named Plaintiff requests, and Defendant does not oppose,

an award of one-third (1/3) of the Gross Settlement Amount for attorneys' fees, or $60,000.00, plus reimbursement of reasonable out-of-pocket costs in the amount of $1,500.00, incurred in litigating this case and achieving a substantial settlement on behalf of Plaintiff and the Settlement Collective Members. *Id*. at ¶ 23(b)(i).

IV. **ARGUMENT**

A. **Applicable Legal Standard for Approval of FLSA Settlements**

As an initial matter, claims for FLSA violations can only be settled if the settlement is approved by the Department of Labor (DOL) or a court. *Taylor v. Progress Energy, Inc.*, 415 F.3d 364 (4th Cir. 2005). The standard for approval of an action arising under the FLSA requires only a determination that the proposed settlement is "fair and reasonable." *McNeil v. Faneuil, Inc.*, No. 4:15cv81, 2017 WL 5711439, at *3 (E.D. Va. Sept. 25, 2017) (quoting *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1355 (11th Cir. 1982)). Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve "bona fide disputes". *Id*.; *See also Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08cv1310, 2009 WL 3094955, at *8 (E.D. Va. Sept. 28, 2009); *Boone v. City of Suffolk*, 79 F. Supp. 2d 603, 605 (E.D. Va. 1999). "If a proposed settlement reflects a reasonable compromise over issues actually in dispute, then approval by a district court promotes the policy of encouraging settlement of litigation." *Lomascolo*, 2009 WL 3094955 at *8 (quoting *Lynn's Food Stores*, 679 F.2d at 1354).

B. **The Settlement Agreement Is Fair and Reasonable, and Should Be Approved**

In evaluating a proposed settlement of FLSA claims as being fair and reasonable, courts in this Circuit apply the six-factor test articulated in *LaFleur*, which considers: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the

5

experience of counsel who have represented the plaintiffs; (5) the probability of plaintiffs' success on the merits; and (6) the amount of the settlement in relation to the potential recovery. *LaFleur v. Dollar Tree Stores, Inc.*, 189 F. Supp. 3d 588, 593 (E.D. Va. 2016) (citations omitted).

### 1. The Settlement Is Supported by Sufficient Informal Discovery and By the Stage of The Proceedings (First and Second Factors)

The parties conducted sufficient informal discovery before reaching the proposed settlement. After extensive investigation and due diligence, the parties voluntarily entered their settlement discussions based upon the collection and exchange of pre-discovery information and documentation, including electronic time and pay records for the potential collective, which Class Counsel reviewed and analyzed thoroughly. *See* Settlement Agreement at ¶ 3. As a result of extensive settlement discussions and negotiations over several months, the Parties agreed to settle the Lawsuit per the terms in the Settlement Agreement. Based on these notions, "it is clear that the Parties had adequate time to conduct sufficient discovery to 'fairly evaluate the liability and financial aspects of [the] case.'" *Lomascolo*, 2009 WL 3094955, at *11 (*quoting in re A.H. Robins Co.*, 88 B.R. 755, 760 (E.D. Va. 1988)).

"The stage of the proceedings, including the complexity, expense, and likely duration of the litigation, weighs in favor of finding that the settlement is fair and reasonable." *McNeil*, 2017 WL 5711439, at *4. The Settlement Award payments are being made available at an early stage of the litigation, taking into account the fact that a *bona fide* dispute exists as to whether Plaintiff and the Settlement Collective Members were improperly compensated. Importantly, the Settlement Agreement provides for immediate payment to the Settlement Collective Members, as Settlement checks will be mailed with the Settlement Notice. Without the Settlement Agreement, the statute of limitations would continue to run on Plaintiff's and Settlement Collective Members' claims, diminishing the range of possible recovery each day. Accordingly, both Parties

6

recognize that "these proceedings advanced to a stage sufficient to permit the Parties and their counsel to obtain and review evidence, to evaluate their claims and defenses and to engage in informed arm's length negotiations with the understanding that it would be a difficult and costly undertaking to proceed to trial." *Lomascolo*, 2009 WL 3094955, at *11.

Defendant is willing to enter this settlement and forego continued litigation over significant disputed issues of law and fact in order to avoid further costs and disruptions associated with continued litigation. On the other hand, Plaintiff, on behalf of himself and the collective, is willing to resolve his claims for less than he might otherwise receive at trial, because it affords a guaranteed payment and will avoid the uncertainty of a conditional certification motion, a summary judgment motion, decertification, the possibility of counterclaims, and/or trial. Though Plaintiff is confident he would prevail on certification and the merits of his claims, Defendant is also prepared to defend this case, namely by asserting defenses to liability and disputing that Plaintiff's claims are appropriate for FLSA conditional certification. Accordingly, Plaintiff believes that the settlement achieved at this stage is an excellent result for him and the Settlement Collective Members that provides immediate compensation without years of protracted litigation and delay, when taking into account the Parties' respective positions.

### 2. The Settlement Agreement was Reached Through the Diligent Efforts of Experienced Counsel, Without Any Possibility of Fraud or Collusion (Third and Fourth Factors)

"In the absence of any evidence to the contrary", a presumption of fairness arises where a settlement was reached in arm's-length negotiations between capable, experienced counsel after significant exchange of information. *Winingear v. City of Norfolk*, No. 2:12cv569, 2014 WL 3500996, at *3 (E.D. Va. July 14, 2014). Here, there is no such evidence of fraud or collusion present with respect to the Parties' Settlement Agreement, and as such this factor favors the finding

7

of a fair and reasonable settlement. The settlement terms were reached in an adversarial proceeding through arm's length negotiations between capable attorneys who have extensive experience with wage and hour claims, and the terms were reached only after Plaintiff's Counsel engaged in significant investigation and due diligence regarding the facts of the case and the merits of Plaintiff's and punitive collective members' claims, and their likelihood of success at trial, as well as Defendant's potentially and likely defenses. Stephan Decl. at ¶ X. There can be no doubt that the Parties' were well-informed about the strengths and weaknesses of their respective positions, especially considering both Plaintiff's Counsel's and Defendant's Counsel's experience at handling similar claims involving FLSA violations. *Id*. at ¶ X. In the end, experienced counsel on both sides of the matter deemed the settlement fair and reasonable, and as such, warrants approval. See *Howell v. Dolgencorp, Inc.*, No. 2:09-CV-41, 2011 WL 121912, at *2-3 (N.D. W.Va. Jan. 13, 2011).

### 3. The Settlement Represents Adequate Potential Recovery for Plaintiff and Collective Members' Claims, and Is Supported by the Probability of Plaintiff's Success on The Merits (Fifth and Sixth Factors)

Plaintiff claims that Defendant failed to pay him and other similarly-situated individuals proper overtime compensation for hours worked over forty (40) in a workweek. *See generally* Compl. Plaintiff, on behalf of himself and punitive collective members, sought compensation for unpaid overtime, liquidated damages, interests and attorneys' fees and costs. The recovery here is excellent given the range of potential recovery and the assumptions used in calculating Plaintiff's and Settlement Collective Members' damages.

Here, the Gross Settlement Amount of $180,000.00 provides Settlement Collective Members with a more than 100% recovery for unpaid overtime compensation, and was negotiated

8

Case 3:18-cv-00535-MOC-DCK    Document 26    Filed 06/20/19    Page 8 of 17

after Plaintiff's Counsel's substantial investigation, review and analysis of electronic timekeeping and payroll data provided by Defendant prior to agreeing on this settlement. Stephan Decl. at ¶ X. The Gross Settlement Amount is based on an analysis of actual overtime hours worked by the Settlement Collective Members, as determined by Defendant's records to be 4,499.5 total overtime hours, and which, were paid at an average straight-time rate of $51.87 for all hours worked during the relevant time period. *Id*. at ¶ X. Each Settlement Collective Members' individual settlement award is based on the actual overtime hours s/he worked, so that individuals who worked more overtime during the relevant time period will receive a larger award compared to those who worked fewer hours. *Id.* at ¶ X; *See also* Settlement Agreement ¶ 26(c). Using the data provided, Plaintiff's Counsel were able to calculate the maximum, unliquidated half-time overtime compensation amounts owed to putative collective members during the relevant time period as totaling approximately $118,521.75. *Id.* at ¶ X.

In light of the uncertainties relative to the risks of continued litigation, particularly establishing liability and obtaining and maintaining collective action certification, as well as the Parties' desire to avoid future legal proceedings, the settlement here, reached through arm's-length negotiations between experienced counsel, represents a significant and immediate recovery for Plaintiff and Settlement Collective Members. *See e.g., Garcia v. Decalo Med. Group, LLC*, No. MAB 14-CV-00301, 2015 WL 9311984, at *7 (D.Md. Dec. 23, 2015) (approved settlement of approximately 32% of maximum potential recovery); *see also Edelen v. Am. Residential Servs., LLC*, No. DKC 11-2744, 2013 WL 386986 (D. Md. July 22, 2013) (same*); Rossi v. Circle Treatment Ctr., P.C.*, No. 14-3803-GJH, 2015 WL 1815501, at *3 (D.Md. April 17, 2015) (settlement represents approximately 34% of potential maximum recovery). Accordingly, these factors support approval of the Parties' Settlement Agreement as fair and reasonable.

9

### 4. The Notice of Settlement Sufficiently Notifies Collective Members of Their Rights Under the Settlement

The Court should also approve the proposed Notice of Settlement, which sufficiently informs Settlement Collective Members of the nature of the Litigation and terms of the Settlement Agreement, their individual Settlement Awards, the scope of the Released Claims, the payment of Attorneys' Fees and Litigation Costs, and how they may opt-in to or not opt-in to the settlement by cashing or not cashing an enclosed settlement check. *See Cerrato v. Alliance Material Handling, Inc.*, No. WDQ-13-2774, 2014 WL 1779823, at *6 (D. Md. April 30, 2014*)* (approving collective notice that, *inter alia*, described settlement terms and fee allocation).

### C.     The Service Award to Named Plaintiff Is Justified and Should Be Approved

Pursuant to the Parties' Settlement Agreement and subject to the approval of the Court, Defendant has agreed to provide the Named Plaintiff, Patrick Udoewa, with a Service Award payment in the amount of $10,000.00 for his significant contributions to the prosecution and reasonable resolution of the lawsuit. *See* Settlement Agreement, ¶ 23(a). Courts routinely approve incentive awards to compensate named plaintiffs for "…the actions taken by the plaintiffs to protect the interests of the settlement class, the degree to which the settlement class has benefited from those actions, and the amount of time and effort plaintiffs have expended in pursuing litigation." *Speaks v. U.S. Tobacco Coo.*, No. 5:12-CV-729-D, 2018 WL 988083, at *9 (E.D.N.C. Feb. 20, 2018) (citing *Kirven v. Cent. States Health & Life Co. of Omaha*, No. 3:11-2149-MBS, 2015 WL 1314086, at *13-14 (D.S.C. Mar. 23, 2015). It is particularly appropriate to compensate named plaintiffs with incentive awards where they have actively assisted counsel in the prosecution of the litigation for the benefit of a class and/or collective. *Speaks*, 2018 WL 98883, at *9 (citing *Kruger v. Novant Health, Inc.*, No. 1:12CV208, 2016 WL 6769066, at *6 (M.D.N.C.

Sept. 29, 2016) ("Thus, an incentive award of $10,000 for the class representatives is reasonable given their contributions to the case.").

Here, the role of the Named Plaintiff was crucial. He sacrificed his time to prosecute this action on behalf of his fellow current and former workers, and he routinely conferred and corresponded with Counsel on a regular basis, staying abreast of current pleadings, and settlement-related informal discovery. Moreover, Plaintiff took a significant risk in representing the interests of his fellow workers, including potentially risking his reputation in his field of employment by prosecuting this case on behalf of the collective. *See Speaks,* 2018 WL 988083, at *9 (noting that "without incentive awards, the class representatives would not be rewarded for their participation or for the risk of pursuing this action with no promise of a successful outcome."); *Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 472 (S.D. W. Va. Nov. 5, 2010*)* (noting that "serving as a class representative is a burdensome task and it is true that without class representatives, the entire class would receive nothing.").

Finally, the Service Award payment of $10,000.00 is consistent with those approved in similar wage and hour collective actions within this Circuit. *See Kay Co.*, 749 F. Supp. 2d at 473 (in FLSA collective action, awarding $15,000 service awards to each Class Representative); *Speaks*, 2018 WL 988083, at *8 (approving service awards of $10,000 to each plaintiff); *Savani v. URS Prof'l Solutions LLC*, 121 F. Supp. 3d 564, 577 (D.S.C. 2015) (approving service award of $15,000 for class representative). For all of these reasons, the Service Award payment of $10,000.00 to Named Plaintiff Patrick Udoewa should be approved as fair and reasonable.

      **D.**     **Attorneys' Fees and Reasonable Litigation Costs Should Be Approved**

As an initial matter, the FLSA allows for a plaintiff to recover his or her attorneys' fees and expenses under the statute's fee-shifting provisions. *See* 29 U.S.C. § 216(b) ("The court in

such action shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). The Supreme Court has recognized the "common fund" exception to the general rule that a litigant bears his/her own attorney's fees in *Trustees v. Greenough*, 105 U.S. 527 (1881). The Supreme Court went on to explain the rationale for the common fund principle, stating "that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). While Courts may approve an attorney's fee on the basis of either a lodestar calculation or a percentage of the common fund method, the trend in this Circuit is to use the percentage of the common fund method in common fund cases, such as this one. *Savani,* 121 F. Supp. 3d at 568; *Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 438 (D. Md. 1998) (noting endorsement of percentage-of-recovery method by several courts in the 4th Circuit); *Strang v. JHM Mortgage Sec. Ltd. P'ship,* 890 F. Supp. 499, 503 (E.D. Va. 1995) ("the percentage method is more efficient and less burdensome than the traditional lodestar method, and offers a more reasonable measure of compensation for common fund cases"). Generally, courts use the lodestar method as a "cross check" to the percentage method and do not scrutinize the fee records as rigorously. *Savani*, 121 F. Supp. 3d at 575; *Kirven v. Central States Health & Life Co. of Omaha*, No. 3:11-2149-MBS, 2015 WL 1314086, at *12 (D.S.C. Mar. 23, 2015) (district court case within the Fourth Circuit that use the lodestar method as a cross-check to ensure the percentage of fund method award is fair a reasonable).

Moreover, the percentage method is also largely preferred because it "operates similarly to a contingency fee arrangement in that the attorneys receive a percentage of the final monetary value obtained for their clients." *Jones v. Fominion Res. Servs.*, 601 F. Supp. 2d 756, 758 (S.D.

12

W. Va. 2009). This is due to the tailoring effect of the percentage fund method, where the attorneys' award is tied to the overall achieved result rather than a sum of billed hours by the attorneys. *Id.* at 759 ("the percentage method better aligns the interests of the class counsel and class members"). The Lodestar calculation does just the opposite, opening up the possibility for class counsel to "…draw out cases in an effort to increase the number of hours used to calculate their fees." *Id.*; *In re MicroStrategy, Inc. Sec. Litig*, 172 F. Supp. 2d 778, 787 (E.D. Va. 2001).

### 1. The Requested Fee is Reasonable Under the Percentage-of-Recovery Method

Plaintiff's Counsel request, and Defendant does not oppose, a contingency fee of one-third of the Gross Settlement Amount, or $60,000.00 plus costs in the amount of $1,500.00. This allocation is consistent with other attorneys' fee awards commonly accepted within the Fourth District in FLSA settlements. *See e.g., Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05CV00187, 2007 WL 119157, at *2 (M.D.N.C. 2007) ("In this jurisdiction, contingent fees of one-third…are common."); *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 2d 499, 506 (M.D.N.C. 2018) ("the attorneys' fees award in similar cases factor weighs in favor of approving the settlement because fee awards of one-third of the common fund are common in FLSA cases"); *DeWitt v. Darlington County, S.C.*, No. 4:1-cv-00740-RBH, 2013 WL 6408371, at *9 (D.S.C. Dec. 6, 2013) (collecting FLSA cases where courts approved attorney fees of one-third of the recovery).

The Gross Settlement Amount, which provides Settlement Collective Members with immediate recovery of damages for their FLSA claims, was carefully negotiated based on Plaintiff's Counsel prior experience litigating similar cases involving healthcare workers, as well as Plaintiff's Counsel's substantial investigation into the facts and law of this case, and the review and analysis of documents and data produced by Defendant in preparation for settlement discussions. Stephan Decl. at ¶ X. Plaintiff's Counsel are nationally recognized for their expertise

13

in litigating complex class and collective actions, including wage and hour actions, and are justified in seeking compensation in the form of one-third of any potential settlement, plus out-of-pocket expenses, for their efforts. *Id.* at ¶ X. Before agreeing to take on this matter, Plaintiff's Counsel entered into a contingency agreement with Named Plaintiff, allowing Plaintiff's Counsel to request a reasonable percentage of the recovery as a contingency fee payment, plus out-of-pocket expenses. *Id.* at ¶ X. Thus, Plaintiff's Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly-contingent basis despite the significant risk. *Id.* at ¶ X.

Accordingly, the Attorneys' Fee Award in the amount of $60,000.00, or one-third of the gross settlement fund, is fair and reasonable in light of the services performed and the results achieved, and should be approved.

### 2. The Lodestar Cross-Check Confirms that the Requested Fee is Justified

The practice in the Fourth Circuit has been to apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross check. *E.G., In re Neustar, Inc. Sec. Litig.*, No. 1:14cv885, 2015 WL 8484438, at *7 (E.D. Va. Dec. 8, 2015) (characterizing the use of the lodestar method as a cross-check for the percentage method as "the common practice within this Circuit"). As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *Id*.

Overall, Plaintiff's Counsel expended at least 97.8 total hours prosecuting this case, representing a total lodestar amount of at least $43,427.50. Stephan Decl. at ¶ X. Plaintiff's Counsels' lodestar amount is based on the product of the reasonable hourly rates and reasonable hours billed by the attorneys who worked on this case: Partner, Ryan F. Stephan ($675/hour); Partner, Andrew C. Ficzko ($525/hour); Stephan Zouras legal staff ($175/hour). *Id.* at ¶ X. The

14

rates used in calculating Plaintiff's Counsels' lodestar are similar and/or consistent with rates used by courts in this District. *Kirkpatrick*, 352 F. Supp. 3d at 507 ("Counsel's hourly rates fall within what the court observes to be prevailing market rates in the relevant community for this type of work"); *Personhuballah v. Alcorn*, 239 F. Supp. 2d 929, 948 (E.D. Va. 2017) (approving rates as follows: $575 for senior partners, $390 to $40 for senior associates, and $310 to $345 for junior associates) (vacated and remanded on other grounds).

Moreover, for purposes of the crosscheck, these rates have been submitted to, and approved by, other courts. For example, similar rates were approved for Stephan Zouras, LLP in *Bhattacharya et al. v. Capgemini North America, Inc., et al.*, Case No. 1:16-cv-07950 (N.D. Ill. November 13, 2018); *Reddick v. Symphony Diagnostic Services No. 1, Inc.*, Case No. 16-cv-9959 (N.D. Ill. July 11, 2017); *Ivy v. Adventist Midwest Health*, Case No. 1:16-cv-7606 (N.D. Ill. November 14, 2018). Stephan Decl. at ¶ X.

Overall, Plaintiff's Counsel request a fee that is 1.38 times their lodestar amount. Their lodestar is a reasonable estimate of the fees accrued to date because Plaintiffs' Counsel compiled it from contemporaneous time records and used billing judgment to account for overstaffing and duplicative work. As such, Plaintiff's Counsel's request should be approved.

## V. CONCLUSION

For the reasons stated herein, the Plaintiff respectfully requests that the Court grant this Unopposed Motion for Approval of Settlement, and enter the accompanying proposed Approval Order.

June 20, 2019　　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　*/s/ Ryan F. Stephan*
　　　　　　　　　　　　　　　　　　　Andrew C. Ficzko

15

**STEPHAN ZOURAS, LLP**
100 North Riverside Plaza,
Suite 2150
Chicago, Illinois 60606
(312) 233 1550
rstephan@stephanzouras.com
aficzko@stephanzouras.com

**ATTORNEYS FOR PLAINTIFF AND THE SETTLEMENT COLLECTIVE MEMBERS**

16

**CERTIFICATE OF SERVICE**

      I, the attorney, hereby certify that on June 20, 2019, I filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

                                          */s/ Ryan F. Stephan*